John J. BENYI, Plaintiff,

v.

BROOME COUNTY, N.Y.; County Executive Carl Young; City of Binghamton, N.Y.; and its Mayor, Juanita Crabb, Defendants.

No. 91–CV–18 (NPM).

United States District Court,
N.D. New York.

March 9, 1995.

Reconsideration Denied
June 23, 1995.

---

John Joseph Benyi, Ossining, NY, pro se.

Robert G. Behnke, Broome County Atty., Binghamton, NY, for Broome County, New York.

Linda S. Kingsley, Cty. of Rochester Corp. Counsel, Dept. of Law, Rochester, NY, for Carl Young, County Executive, and Juanita Crabb, Mayor.

## OPINION AND ORDER

BAER, District Judge.

Chief Judge Thomas J. McAvoy of the United States District Court for the Northern District of New York transferred this dispositive motion (and nine similar motions) to me, by order dated November 5, 1994, due to the backlog caused by a number of vacancies in his district.

Plaintiff John J. Benyi ("Benyi") *pro se*, a New York State prisoner, brought this suit on January 7, 1991 for sixty four million dollars in damages arising from alleged deprivations of his Constitutional and civil rights pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, and 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Defendants are Broome County, N.Y., former County Executive Carl Young, the City of Binghamton, N.Y., and its former Mayor Juanita Crabb (collectively "Defendants"). Benyi makes wide ranging factual allegations without linking them to specific statutes or Constitutional rights. All but one of the alleged events occurred over three years before Benyi commenced this action.

Benyi now moves for summary judgment. Defendants cross move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the basis of Local General Rule 10 and the statutes of limitations. For the reasons that follow, I deny Benyi's motion and grant Defendants' cross motion in part.

## I. FACTUAL BACKGROUND

This summary represents the Court's best effort to understand Benyi's affidavit of fact. On April 27, 1987, the City Court of Binghamton, N.Y. arraigned Benyi on the charges of attempted rape, sodomy, and sexual assault and remanded him to the Broome County Correctional Facility. Plaintiff's Affidavit of fact at ¶ 4. Benyi was tried, convicted, and sentenced to five to fifteen years for attempted rape and two to six years for sexual abuse on March 18, 1988. *Id.* at ¶ 42.

In May 1987, J. Lalyer, an inmate, threatened to kill Benyi after he told Lalyer of the sex crimes charged against him. Deputy William Guzzy moved Benyi to another part of the prison and told Benyi to tell the other inmates that the state charged him with burglary. *Id.* at ¶ 5. Shortly thereafter, Benyi asserts that Deputy Guzzy moved Lalyer into Benyi's section of the prison. Lalyer then told other prisoners of the charges against Benyi. *Id.* at ¶ 8.

Between May 16 and May 23, 1987, Benyi sent three notes about "potential trouble" to the prison's main desk. *Id.* at ¶ 10. On or about May 23, 1987, Benyi asserts that Deputy Guzzy stopped inmate Haven's assault of Benyi. Haven apparently knocked him unconscious for over an hour. *Id.* at ¶ 12. Lourdes Hospital diagnosed injuries to Benyi's right ear, right eye, right mandible, and to the right side of his trachea. *Id.* at ¶ 12.

In May 1987, Benyi claims the staff of the Broome County Correctional Facility, knowing that he was a disabled veteran, denied him medical treatment. *Id.* at ¶ 4. Benyi informed Corrections officers in a medical questionnaire of his allergy to steroids. *Id.* Benyi alleges that on May 28, 1987 Dr. William Teller, at Wilson Hospital in Johnson City, N.Y., injected him with steroids to perform a "craniotomy." *Id.* Benyi asserts that he had repeated seizures throughout the Summer of 1987 in reaction to the steroids. *Id.* at ¶ 15.

Benyi claims that in July 1987, the Broome County Correctional personnel denied him access to legal materials. *Id.* at ¶ 16. However, after Deputy Guzzy transferred Benyi to B–Block on February 22, 1988, the prison personnel granted him access to one law book. *Id.* at ¶ 42.

Benyi also asserts that the Broome County Sheriff's Department, and the Binghamton Police, failed to respond to several "FOIL" requests he filed, presumably pursuant to New York's Freedom of Information Law. N.Y.Pub.Off.Law § 89 (McKinney 1988). Beginning in late 1988, he asked the police departments to turn over "exculpatory material" he believed was in their possession. Plaintiff's Affidavit of fact ¶ 6, 44, 45. The police departments responded that no exculpatory material existed. Former Mayor Juanita Crabb apparently denied Benyi's appeal from the police departments' failure to respond. *Id.* at ¶ 45. The departments did disclose documents, unrelated to Benyi's defense, describing a burglary of Benyi's apartment. *Id.* at ¶ 6. The Appellate Division, Third Department, dismissed Article 78 proceedings that Benyi brought against the police departments and the former Mayor regarding the FOIL requests. *Id.* at ¶ 28.

Benyi further claims that the Broome County Correctional Facility repeatedly denied him temporary release from prison because he did not take two programs recommended by a counsellor. *Id.* at ¶ 60. Benyi alleges that the program administrators either unjustly rejected or ignored his request for admission into the programs. *Id.* at ¶ 60.

Lastly, Benyi alleges that "Vigilantes" in Broome County, by which he presumably means the Defendants, sent him a death threat because he filed this action. *Id.* at ¶ 53. The undated letter, hand written, stapled to an envelope addressed to Benyi and post marked Binghamton, N.Y., November 14, 1990, reads:

> You scum-bag mother f———. Now that I know where you live I'm going to come finish what I started in e-section at the downtown jail.
>
> /s/ S. Haven.
>
> P.S. This time you won't get out of the hospital.

Benyi states that he sent copies of the letter to the United States District Court for the Northern District of New York and various

law enforcement agencies and that no party acted on the threat. *Id.* at ¶ 53.

## II. DISCUSSION

### A. *Standard For Summary Judgement Motions*

▮ Federal Rule of Civil Procedure 56(c) requires me to grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The disputed issues of fact must be "material to the outcome of the litigation," *Id.* at 11, and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* With respect to materiality,

> substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual dis-

putes that are irrelevant or unnecessary will not be counted.

*Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### B. *Failure to Comply with Local General Rule 10*

The Defendants claim that they are prejudiced by Benyi's failure to comply with Local General Rule 10 for the Northern District of New York. Aff. of Robert Behnke, attorney for defs., at ¶ 4. Local Rule 10(c) requires a movant to file a memorandum of law and an affidavit in support of a motion. N.Y.N.Dist.R. 10(c). The Rule also requires that moving papers specify the rules or statutes on which a party bases its motion. The court need not consider any papers not filed in compliance with the Rule, and may deem failure to comply as consent to the grant or denial of the motion.

▮ Benyi fails to comply with Local Rule 10 and his allegations are difficult to decipher. However, in determining the sufficiency of a *pro se* pleading, this Court must construe it liberally, applying less stringent standards than when counsel prepares pleadings. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980). Thus, I will not bar Benyi's motion for summary judgement because he failed to meet the requirements of Local General Rule 10.

### C. *Statute of Limitations*

▮ Defendants also seek summary judgment based on the statute of limitations. The limitations period for personal injury actions under state law supplies the limitations period for 42 U.S.C. §§ 1981, 1983, and 1985. *Ortiz v. Morgenthau*, 772 F.Supp. 1430, 1432 (S.D.N.Y.1991). Section 214 of the New York Civil Practice Law and Rules ("CPLR") provides a three-year limitation for such actions. N.Y.Civ.Prac.L. & R. 214 (McKinney 1990). By contrast, 42 U.S.C. § 1986 has its own one-year limitation period. *Ortiz*, 772 F.Supp. at 1432. These claims accrue "when the plaintiff knew or had reason to know of the injury which is the basis for this action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir.1980). Benyi's alleged injuries are such that he would have known or have had reason to

know of them immediately. Benyi commenced this action on January 7, 1991. Therefore, I must dismiss Benyi's Section 1981, 1983, 1985, and 1986 claims based on events alleged to have occurred in or before the Summer of 1987, unless Benyi has grounds, implied in his papers, for tolling the statute.

■ Benyi's implied negligence claim based on his injuries is part of the same case or controversy as his Section 1983 claims. Thus, this court may exercise supplemental jurisdiction over it. 28 U.S.C. § 1367 (1990). However, CPLR Section 214 also bars any tort claim Benyi may have from inmate Haven's assault not made within three years. Benyi's negligence claim accrued when his Section 1983 claim accrued, May 23, 1987. Thus, absent any alleged or apparent grounds for tolling the statute, I must also dismiss Benyi's negligence claim as time barred.

### 1. *Tolling*

■ Federal courts must apply state tolling provisions to federal claims unless Congress established specific tolling rules. *Board of Regents v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975). If federal policy underlying the cause of action conflicts with a state's tolling provision, such policy considerations will displace the state's rule. *Woods v. Candela*, 13 F.3d 574, 576 (2d Cir.1994). The Supreme Court identified deterrence of future violations and compensation for past violations as two of the principle policies underlying 42 U.S.C. § 1983. *Id.* at 577; *Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797. However, New York's three-year statute of limitations conflicts neither with the deterrence nor the compensation goals of Section 1983. Injured parties have adequate time to enforce their claims. *Id.* at 577. Thus, New York's tolling provisions apply here.

■ Under New York law, imprisonment does not act as a toll. N.Y.Civ.Rights § 79, subd. 2; *see also, Pinaud v. County of Suffolk*, 798 F.Supp. 913, 920 (E.D.N.Y.1992). Benyi could argue that although he knew of the Defendants' injurious acts at the time they occurred, he did not learn of the supposed conspiracy until later. However, Benyi must plead specific facts to support his claim of conspiracy. "Such conclusory allegations of conspiracy are insufficient to sustain a complaint." *Zemsky v. New York*, 821 F.2d 148, 151 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987). Furthermore, plaintiffs may not toll the statute of limitations by pleading that the separate acts were part of a continuing conspiracy. *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir.1980). Allowing a plaintiff to toll the statute of limitations on this basis would defeat its purpose to preclude stale claims. *Id.* Because Benyi neither argues nor implies a basis to toll the statute of limitations, I dismiss his 42 U.S.C. §§ 1981, 1983, 1985, and 1986 claims relating to the events in or before the Summer of 1987 as a matter of law.

### D. *The Eighth Amendment and Substantive Due Process Claims*

■ Benyi claims that unknown "Vigilantes," presumably the Defendants, sent him a death threat which appears to have been signed by inmate Haven. The three-year statute of limitations for Section 1983 applies to claims regarding the right to personal security under the Due Process Clause and the Eighth Amendment. *Ortiz*, 772 F.Supp. at 1432. Because Defendants do not dispute Benyi's allegation that he received the threat on November 14, 1990, Benyi filed this claim timely.

■ Prison officials have a Constitutional duty to protect the personal security of inmates. *Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982). The Due Process Clause of the Fourteenth Amendment recognizes personal security as an "Historic liberty interest." *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Lawful confinement, even for penal purposes, does not extinguish this right. *Youngberg*, 457 U.S. at 315, 102 S.Ct. at 2457–58; *see also Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The state is responsi-

ble for the inmate's security. *Davidson v. O'Lone,* 752 F.2d 817, 820 (3rd Cir.1984). To properly assert a claim under both the Fourteenth and the Eighth Amendment, Benyi must show that prison officials were deliberately indifferent to his personal security. *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991); *Redman v. County of San Diego,* 942 F.2d 1435, 1440 (9th Cir.1991). However, occasional isolated attacks by inmates or guards are not actionable under the Eighth Amendment. *Woodhous v. Virginia,* 487 F.2d 889, 890 (4th Cir.1973). In addition to the timely claim based on the letter from the "Vigilantes," Benyi can adduce evidence at trial of inmate Layler's threat, the prison's response to threats against Benyi, and inmate Haven's assault in 1987. The last three time-barred events cannot give rise to independent claims, but they can support a Section 1983 claim based on the "Vigilante" letter. On these facts, Benyi has raised a triable issue of material fact for a Section 1983 claim that the prison officials were deliberately indifferent to his safety.

 Benyi cannot bring a claim directly under the Eighth Amendment or the Fourteenth Amendment Due Process clause "against a municipality because the plaintiff may proceed against [a municipality] under Section 1983." *Turpin v. Mailet,* 591 F.2d 426, 427 (2d Cir.1979). Thus, Benyi has no claim against the Defendants directly under the Constitution.

### E. *The Freedom of Information Law Claim*

 Benyi claims that the Defendants did not comply with his requests pursuant to the New York Freedom of Information Law ("FOIL"). N.Y.Pub.Off.Law § 89 (McKinney 1988). Federal courts have discretion to exercise supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367 (1990). The state and federal claims must derive from a common nucleus of operative fact. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218

(1966). Benyi's FOIL claim arises from the Broome County Sheriff and the Binghamton Police Departments' alleged failure to turn over exculpatory material which they say does not exist. Benyi's civil rights claim arises from the threats to his personal safety while incarcerated. I find that these claims do not arise from a common nucleus of operative fact and are not part of the same case or controversy. The Constitutional right to personal safety and a request for documents are distinct factually and legal. Therefore, this Court cannot exercise supplementary jurisdiction over Benyi's FOIL claims.

### III. CONCLUSION

Having found that the statutes of limitations bar Benyi's 42 U.S.C. §§ 1981, 1983, 1985, and 1986 claims as to events in or before the Summer of 1987, I grant Defendants' motion for summary judgement as to these claims. However, I deny Defendants' motion for summary judgement as to Local General Rule 10 and Benyi's Section 1983 claims based on the "Vigilante" letter. Furthermore, I dismiss Benyi's FOIL claim for lack of jurisdiction and deny Benyi's motion for summary judgement in its entirety.

### SO ORDERED

### ON RECONSIDERATION

By Opinion and Order dated March 9, 1995, this Court granted in part the motion for summary judgment of the defendants, and dismissed all but one of the plaintiff's claims for relief. On March 27, 1995, Plaintiff moved for reconsideration. Plaintiff also seeks decisions in three long-pending discovery motions. For the reasons below, plaintiff's motion for reconsideration is denied and his motion to compel discovery is granted as to his remaining claim.

#### Procedural History

Plaintiff John J. Benyi, *pro se,* a New York State prisoner, brought this suit in early 1991 for alleged deprivations of his Constitutional and civil rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, and 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Defendants are Broome County, N.Y., its former County Executive Carl Young, the

City of Binghamton, N.Y., and its former Mayor Juanita Crabb ("Defendants").

On December 21, 1992, U.S. Magistrate Judge Gustave J. DiBianco ordered that all discovery be completed by May 16, 1993. On March 5, 1993, Benyi moved for Summary Judgment. On March 16, 1993, defendant Broome County, N.Y. cross-moved for Summary Judgment. Between March 25 and May 6, 1993, Benyi propounded numerous interrogatories and document requests to the Defendants. On May 6, 1993, having received no response to any of his requests, plaintiff wrote to defendants Broome County and the City of Binghamton seeking compliance with his requests. Benyi then moved to compel discovery on June 9, 1993. On July 8, 1993, Benyi again sought court intervention in the discovery process. On July 28, 1993, defendant Broome County moved for a protective order to stay discovery in this action pending the disposition of their motion for summary judgment. On October 21, 1993, plaintiff moved to expedite a ruling on his discovery motions. None of these motions have been decided.

## Discussion

### A. *The Motion to Reconsider*

Plaintiff moved for reconsideration of this Court's March 9, 1995 Opinion and Order pursuant to Local Rule 7.1 for the Northern District of New York and Rules 60–69 of the Federal Rules of Civil Procedure. Local Rule 7.1(g) provides that motions for reconsideration are to be governed by Federal Rule of Civil Procedure 60. Although plaintiff does not specify which section of Rule 60(b) he relies on, paragraph six is on point. It states that on motion for reconsideration the court may grant relief for any other reason justifying relief from the operation of the judgment. Fed.R.Civ.P. 60(b).

It is axiomatic that Rule 60(b)(6) "is not to be used as a substitute for appeal." *House v. Secretary of Health and Human Services,* 688 F.2d 7, 8 (2d Cir.1982); *Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32, 34 (2d Cir.1979). Furthermore, "relief under 60(b)(6) may be granted only when 'exceptional' or 'extraordinary' circumstances exist." *House,* 688 F.2d at 8. In this Circuit, three situations warrant reconsideration of a previous court deci-

sion: " '(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent a manifest injustice.' " *Palaimo v. Lutz,* 837 F.Supp. 55 (N.D.N.Y.1993) (quoting *McLaughlin v. State of New York,* 784 F.Supp. 961, 965 (N.D.N.Y.1992)). Because Plaintiff's motion cites no new law or evidence it must be premised on the third ground.

■■■ Courts have " 'cautioned that any litigant considering bringing a motion to reconsider based upon that ground [Fed. R.Civ.P. 60(b)(6) ] should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.' " *Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.,* No. 91–CV–325, 1994 WL 494639 at * 2, 1994 U.S.Dist. LEXIS 12813 at *7 (N.D.N.Y. Aug. 15, 1994). Benyi alleges numerous errors in this Court's Opinion and Order. None of these putative errors amounts to more than "disagreement between the Court and the litigant," and are thus not grounds for reconsideration. *Aquilio,* 1994 WL 494639, at 2, 1994 U.S.Dist. LEXIS 12813, at *7 (quoting *McDowell Oil Service v. Interstate Fire and Cas.,* 817 F.Supp. 538, 541 (M.D.Pa.1993) (citation omitted)). Therefore, the motion for reconsideration is denied.

### B. *The Discovery Motions*

Benyi is plainly entitled to discovery relating to his one remaining claim concerning the death threat letter. The defendants must comply with Benyi's valid discovery requests. Of the numerous discovery requests, eight interrogatory questions are relevant to the remaining claim. Defendant Behnke is ordered to answer plaintiff's Interrogatories addressed to him on April 9, 1993, numbers 1, 2, 3a, 3b, 15, 16a and 16b, by July 21, 1995. Furthermore, any additional discovery the parties wish to propound must be served by July 21, 1995 and responded to by September 21, 1995.

## Conclusion

Having found that Benyi raises no grounds that warrant reconsideration of my opinion

and order, Benyi's motion to reconsider is denied. Plaintiff's motion to compel discovery on his remaining claim is granted.

**SO ORDERED**